**Morton I. HYSON, M.D., P.A., Appellant,**

v.

**Peter CHILKEWITZ, Appellee.**

No. 05–95–00403–CV.

Court of Appeals of Texas, Dallas.

Jan. 27, 1998.

James M. Underwood, Thompson & Knight, P.C., Dallas, Debora McWilliams Alsup, Thompson & Knight, P.C., Austin, for Appellant.

David G. Hart, Law Offices of David G. Hart, Bedford, Sue Walker, Law Offices of Sue Walker, Fort Worth, for Appellee.

## OPINION

MOSELEY, Justice.

Morton I. Hyson, M.D., P.A. (Association) appeals from a jury verdict in favor of appellee Peter Chilkewitz in his suit for medical malpractice. Association contends, among other things, that Chilkewitz's suit is barred by limitations. Because we determine that the tolling provisions asserted by Chilkewitz cannot toll the limitations period provided by the Medical Liability and Insurance Improvement Act, we agree Chilkewitz's action against Association is barred by limitations.

Therefore, we reverse the judgment of the trial court and render judgment that Chilkewitz take nothing against Association.

### BACKGROUND

Association is a professional association under the Texas Professional Association Act.[1] Dr. Morton I. Hyson, a neurologist, practiced medicine as an employee of Association. Hyson was also the sole shareholder, director, and officer of Association.

In 1987, Chilkewitz injured his back. He sought treatment from an orthopedic surgeon, who was not an employee of Association. After several months of unsuccessful therapy, the surgeon recommended back surgery. He referred Chilkewitz to Hyson, who performed some pre-operative tests.

On January 14, 1988, Chilkewitz underwent back surgery. The surgeon had arranged for a technician employed by Association to perform somatosensory evoked potential (SEP) monitoring on Chilkewitz during surgery. SEP monitoring involves using small electrodes to stimulate the patient with a mild electrical shock; the resulting impulses are observed as they travel to the brain to monitor whether the surgical procedure is causing injury to the nervous system. Hyson was not present during the surgery.

During Chilkewitz's surgery, the surgeon used an electrocautery unit (ECU) to make incisions and cauterize blood vessels. The ECU also passes electricity through the body of the patient, but this electric charge is greater than that generated by the SEP monitor. Because the ECU was improperly grounded, the electricity from the ECU passed back to ground through one of the SEP monitor electrodes, heating the electrode and causing a severe burn to Chilkewitz's left leg.

1. *See* TEX REV.CIV. STAT. ANN. art. 1528f (Vernon 1997 & Supp.1998).

2. *See* TEX.REV CIV. STAT. ANN. art. 4590i (Vernon Supp.1998).

3. TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01 (Vernon Supp.1998) (emphasis added).

### STATUTE OF LIMITATIONS

Chilkewitz's claims against Association are governed by the Medical Liability and Insurance Improvement Act (the Act).[2] Section 10.01 of the Act provides:

*Notwithstanding any other law*, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed.... *Except as herein provided*, this subchapter applies to *all* persons regardless of minority or other legal disability.[3]

Section 4.01 of the Act requires a person asserting a health care liability claim to give written notice of such claim at least sixty days before filing suit and provides that such notice tolls the applicable statute of limitations (*i.e.*, section 10.01 of the Act) for a period of seventy-five days following the giving of the notice.[4] When the precise date of the tort is known, the statutory two-year period begins on that date.[5]

### Chronology of Events

Chilkewitz's two-year limitations period under the Act began on January 14, 1988, the date he was injured. In December 1989, he notified Hyson of his "potential medical malpractice claim" by letter, thus tolling the limitations period under the Act for seventy-five days. On January 30, 1990, within two-years, seventy-five days of the date he was injured, Chilkewitz filed suit against Hyson, individually, the surgeon, and the hospital in which his surgery was performed.

In his Original Petition, Chilkewitz alleged generally that while he was under the care of the surgeon and Hyson, he sustained an electrical burn resulting from tests ordered and performed under their general supervision. He alleged the tests were performed by hos-

4. TEX.REV.CIV. STAT. ANN. art. 4590i, § 4.01(a), (c) (Vernon Supp.1998).

5. *Bala v. Maxwell*, 909 S.W.2d 889, 891 (Tex. 1995); *Waters ex rel. Walton v. Del–Ky, Inc.*, 844 S.W.2d 250, 255 (Tex.App.—Dallas 1992, no writ).

pital personnel, or by persons under their direction or supervision. Chilkewitz's Original Petition did not name Association as a party.

On August 22, 1990, more than two years, seventy-five days after the injury, Chilkewitz filed his First Amended Original Petition, naming Association as a party for the first time. In this pleading, Chilkewitz alleged that, while under the care of the surgeon, Association, and a technician employed by Association, he was injured during testing ordered and performed under the general supervision of the surgeon and Association. He alleged that the testing was performed in part by hospital personnel or by persons under their direction or supervision, and in part by personnel under direct control and supervision of Association, the surgeon, and the hospital. He further alleged that Hyson and the technician were under the direct supervision of Association and in its employ.

Chilkewitz's First Amended Original Petition also alleged that he had misnamed Association as Hyson in his Original Petition; alternatively, he alleged that if he sued the wrong party, then Association was aware of the suit and not prejudiced by the misidentification. Although Chilkewitz did not specifically list Hyson as a party, he alleged generally that Hyson and Association were jointly and severally liable for his injuries.

In its original answer, Association denied all liability and asserted that Chilkewitz's claims were barred by limitations. It later moved for summary judgment on limitations grounds. The trial court denied that motion.

In his Second Amended Original Petition, filed in November 1990, Chilkewitz asserted some additional grounds for avoiding limitations. In addition to misnomer and misidentification, he alleged that Hyson and Association were alter egos of each other; he also alleged that Hyson was the common or trade name of Association, or vice versa. (His pleadings are unclear.) However, in his subsequent pleadings Chilkewitz alleged only misnomer, dropping all other allegations of matters in avoidance of limitations. Chilkew-

itz also dropped the allegation that Hyson was "jointly and severally" liable with Association, and did not name Hyson as a party. Thus, Chilkewitz effectively dismissed Hyson from the suit.[6]

Trial began on December 5, 1994. The other defendants in the case had settled, leaving Association as the only defendant. At that time Chilkewitz was alleging only misnomer as a matter in avoidance of Association's statute of limitations defense. After Chilkewitz rested his case on December 6, Association moved for a directed verdict based in part on limitations. The trial court overruled that motion. The next day, Chilkewitz reopened his case, without objection, to present evidence relating to Association's motion for directed verdict.

The following day, December 8, Chilkewitz filed a "Motion for Leave to File His Seventh Amended Original Petition to Conform to Issues Tried Without Objection." (Although the record contains no order granting this motion, the Seventh Amended Original Petition was filed that day and, in its brief, Association refers to this petition as being Chilkewitz's operative pleading. Thus, we will assume the motion was granted.) In this pleading Chilkewitz again alleged, in addition to misnomer, that Association was doing business as Morton Hyson, M.D. and was originally sued in its assumed name or common name of "Morton Hyson, M.D."

The jury found in favor of Chilkewitz. The trial court denied Association's subsequent motion for judgment notwithstanding the verdict and renewed motion for judgment notwithstanding the verdict, both based in part on limitations. Instead, the trial court rendered judgment against Association and in favor of Chilkewitz for the amount of damages found by the jury, less credits for payments received from the settling defendants, plus prejudgment interest and costs of court. Association appealed.

### Association's Contentions

In its first point of error, Association contends the trial court erred in entering judg-

6. See *Radelow–Gittens Real Property Management v. Pamex Foods*, 735 S.W.2d 558, 559 (Tex.App.— Dallas 1987, writ ref'd n.r.e.) (op. on reh'g).

ment for Chilkewitz because the statute of limitations bars his cause of action. We interpret this point as a complaint that the trial court erred in denying Association's motion for judgment notwithstanding the verdict in which it raised limitations. The chronology of events set forth above is not in dispute and is shown on the face of the record. Association argues that the evidence establishes that Chilkewitz's claim is barred by limitations as a matter of law.

### Matters in Avoidance of Limitations

In response, Chilkewitz asserts that his timely Original Petition naming Hyson merely contained a pleading error, either misnomer or misidentification. Chilkewitz argues that through the application of these doctrines and because of a lack of prejudice to Association, his First Amended Original Petition naming Association related back to his timely filed Original Petition. Alternatively, Chilkewitz contends his Original Petition correctly sued Association under its assumed name, Morton I. Hyson, M.D. Therefore, Chilkewitz asserts, his claim against Association was not time barred.

■■■ If a plaintiff timely sues the correct defendant but merely misnames him, the timely pleading containing the "misnomer" tolls the applicable limitations period, and a subsequent amendment of that pleading correctly naming the defendant relates back to the date of the misnomer pleading.[7] This doctrine of "misnomer" differs from "misidentification," which occurs when a plaintiff is mistaken about the identity of the proper defendant and an entity with the name mis-

takenly used by the plaintiff actually exists.[8] Even in cases of misidentification, however, limitations will not bar suit if the plaintiff can prove that the proper defendant was not prejudiced by the mistake in pleading.[9]

■■■ Additionally, Rule 28 of the Texas Rules of Civil Procedure authorizes suit by or against an entity or individual in its common or assumed name for the purpose of enforcing for or against it a substantive right.[10] This rule is a procedural rule of equity which allows courts to toll a statute of limitations when the plaintiff sues a party in its assumed name.[11] The plaintiff must join the proper party doing business under an assumed name and demonstrate that the party had knowledge of the suit.[12]

### Waiver

■ On appeal, Chilkewitz asserts misnomer, misidentification, and assumed name as matters in avoidance of limitations. In his pleadings as of the time of trial, however, Chilkewitz did not allege misidentification. Chilkewitz claims that the doctrines of misnomer and misidentification are really the same, and that by pleading misnomer as a matter in avoidance he also raised the issue of misidentification. We disagree.

Misnomer and misidentification are treated as distinct doctrines.[13] As noted above, misnomer occurs when the plaintiff sues the correct party but misnames him, while misidentification occurs when the plaintiff sues the wrong party.[14] Pleading only misnomer does not raise the issue of whether the defendant was not prejudiced by the mistake in

---

7. *Enserch Corp. v. Parker,* 794 S.W.2d 2, 4–5 (Tex.1990).

8. *Id.* at 5.

9. *Id.; Continental S. Lines, Inc. v. Hilland,* 528 S.W.2d 828, 831 (Tex.1975); *Palmer v. Enserch Corp.,* 728 S.W.2d 431, 433 (Tex.App.—Austin 1987, writ ref'd n.r.e.).

10. Tex.R. Civ. P. 28.

11. *Bailey v. Vanscot Concrete Co.,* 894 S.W.2d 757, 759 (Tex.1995); *Cummings v. HCA Health Servs., Inc.,* 799 S.W.2d 403, 405 (Tex.App.— Houston [14th Dist.] 1990, no writ); *L.L.M. v.*

*Mayes,* 733 S.W.2d 642, 644 (Tex.App.—San Antonio 1987, no writ); *Howell v. Coca–Cola Bottling Co.,* 595 S.W.2d 208, 211–12 (Tex.Civ. App.—Amarillo), *writ ref'd n.r.e. per curiam,* 599 S.W.2d 801 (Tex.1980); *Cohen v. Leavell & Co.,* 520 S.W.2d 793, 796 (Tex.Civ.App.—El Paso 1975, no writ); *Continental Trailways, Inc. v. Hilland,* 516 S.W.2d 279, 280–81 (Tex.Civ.App.— Houston [14th Dist.] 1974), *rev'd on other grounds sub nom. Continental S. Lines, Inc. v. Hilland,* 528 S.W.2d 828 (Tex.1975).

12. *Bailey,* 894 S.W.2d at 760.

13. *See Parker,* 794 S.W.2d at 4–5.

14. *See id.*

pleading—an issue necessary to toll limitations in cases of misidentification.[15] Because misnomer and misidentification are distinct doctrines, Chilkewitz needed to plead both in order to rely on both. By failing to plead misidentification, Chilkewitz waived it as a matter in avoidance of Association's defense of limitations.[16]

If a defendant alleges limitations and the pleadings, on their face, appear to support the defendant, a plaintiff must plead and obtain findings on facts that will avoid the limitations bar.[17] As noted above, Chilkewitz's pleadings at trial raised only two matters in avoidance of section 10.01 of the Act—misnomer and assumed name. However, Association argues that Chilkewitz also waived these matters by failing to plead and/or obtain jury findings supporting them. We disagree.

■ With respect to misnomer, Chilkewitz pleaded this doctrine and presented evidence concerning the relationship between Association and Hyson. Further, the parties agreed that the court would make "any factual determination that needs to be made for limitation." Because misnomer goes directly to the issue of limitations, the parties thus agreed that the judge, not the jury, would make any findings on misnomer. Therefore, no jury findings were necessary, and Chilkewitz did not waive misnomer as a matter in avoidance of limitations.

■ With respect to assumed name, Chilkewitz also presented evidence regarding this doctrine. Further, on the day the case went to the jury, the trial court apparently granted Chilkewitz leave to file his Seventh Amended Original Petition. In this pleading, Chilkewitz pleaded the assumed name doctrine. Therefore, whether "Morton Hyson, M.D." is Association's assumed or common

name was placed at issue. (Normally, a defendant who wishes to contest whether it is doing business under an assumed name must file a verified denial.[18] However, where the issue is tried by consent, as it was here, no verified denial is necessary.[19]) As noted above, Rule 28 operates as a tolling provision in suits involving assumed name. Thus whether Hyson is Association's assumed name is also a fact question relating to limitations, and was covered by the parties' agreement that the court would determine fact issues regarding limitations. Consequently, Chilkewitz did not need jury findings regarding whether Association did business as Morton Hyson, M.D., and he did not waive reliance on Rule 28 as a matter in avoidance of limitations.

### The Issue

By denying Association's motion for judgment notwithstanding the verdict, the trial judge impliedly found that one of the matters that Chilkewitz pleaded in avoidance of limitations, either assumed name or misnomer, applies to defeat the limitations bar. To prevail on appeal, Association must demonstrate that the evidence conclusively established that the cause of action is barred by limitations.[20] That is, Association must show that, as a matter of law, neither assumed name nor misnomer will defeat the limitations bar. Accordingly, the question before us is whether, in light of the restrictive language in section 10.01, either the doctrines of misnomer or assumed name can toll the limitations period contained in the Act.

### Statutory Construction

■ We construe a statute to give effect to the legislative intent.[21] A statute shall be liberally construed to achieve its

15. *Id.; Hilland,* 528 S.W.2d at 831; *Palmer,* 728 S.W.2d at 433.

16. *See* Tex.R. Civ. P. 94; *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 (Tex.1988).

17. *See* Tex.R. Civ. P. 94; *Wright v. Gifford–Hill & Co.,* 736 S.W.2d 828, 834 (Tex.App.—Waco 1987, writ ref'd n.r.e.).

18. *See* Tex R. Civ. P. 93(14).

19. *See Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 495 (Tex.1991).

20. *See J.K. & Susie L. Wadley Research Inst. & Blood Bank v. Beeson,* 835 S.W.2d 689, 693 (Tex. App.—Dallas 1992, writ denied).

21. *Dallas Morning News Co. v. Board of Trustees,* 861 S.W.2d 532, 535 (Tex.App.—Dallas 1993, writ denied).

purpose and to promote justice.[22] Words in statutes have their ordinary meaning unless the statute defines them or they are connected with and used with reference to a particular trade or subject matter or are a term of art.[23] Statutes of limitation should be interpreted in a manner consistent with their terms that will "defeat the mischief intended to be suppressed, and advance the policy and remedy they were designed to promote."[24] Courts are permitted to presume that the legislature intended a just and reasonable result, and that the public interest is favored over any private interest.[25]

### General Limitations Statutes and Exceptions

■ Statutes of limitation rest upon reasons of sound public policy in that they tend to safeguard against fraud and protect the courts from stale claims.[26] The legislative purpose behind the typical statute of limitations is "to compel the exercise of a right within a reasonable time so that the opposite party has a fair opportunity to defend while witnesses are available and the evidence is fresh in their minds."[27]

■ In some situations the legislative purpose behind a limitations statute does not require the harsh result of its application. In those situations, the courts have refused to apply the rigid limitations statute. For example, as discussed above, the courts have crafted the doctrines of misnomer and misidentification to toll the applicable limitations period in some circumstances until a subsequent amended pleading correctly naming the defendant is filed.[28] Similarly, the courts construe statutory language computing a limitations period from the date a cause of action "accrued" as presupposing that the plaintiff knew or had reason to know of his injury.[29] This construction creates the discovery rule, under which the limitations period does not begin to run until the plaintiff discovers or, through the exercise of reasonable care and diligence, should have discovered the nature of his injury.[30] Further, the courts will disregard corporate fictions and toll the limitations period to allow suit against a corporation where its alter ego was timely sued.[31]

■ Rule 28, discussed previously, was enacted by the Texas Supreme Court through the exercise of its rulemaking authority. Under this rule a party may be sued under its common or assumed name. Rule 815 requires that the rules not be construed to enlarge or diminish any substantive rights or obligations of any party to a civil suit.[32] Thus, the courts have consistently interpreted Rule 28 as a tolling provision, tolling limitations against an entity sued under its common or assumed name until it is properly named.[33]

The legislature also has created tolling provisions that apply in certain situations.[34] Thus, the absence from the state of a person against whom a cause of action may be maintained suspends the running of the applicable statute of limitations for the period of the person's absence.[35] Where a plaintiff is of

---

22. Tex. Gov't Code Ann. § 312.006 (Vernon 1988).

23. Tex. Gov't Code Ann. § 312.002 (Vernon 1988).

24. *Owen v. City of Eastland*, 124 Tex. 419, 78 S.W.2d 178, 179 (Tex.1935).

25. Tex. Gov't Code Ann. § 311.021(3), (5) (Vernon 1988).

26. *Alvarado v. Gonzales*, 552 S.W.2d 539, 542 (Tex.Civ.App.—Corpus Christi 1977, no writ).

27. *Hilland*, 528 S.W.2d at 831.

28. *Parker*, 794 S.W.2d at 4–5; *Hilland*, 528 S.W.2d at 831; *Palmer*, 728 S.W.2d at 433.

29. *Gaddis v. Smith*, 417 S.W.2d 577, 580–81 (Tex.1967).

30. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990).

31. *Gentry v. Credit Plan Corp.*, 528 S.W.2d 571, 575 (Tex.1975).

32. Tex.R. Civ. P. 815.

33. *Bailey*, 894 S.W.2d at 759; *see* Tex.R. Civ P. 28; *Hilland*, 528 S.W.2d at 830; *L.L.M.*, 733 S.W.2d at 644.

34. *See generally* Tex. Civ. Prac. & Rem.Code Ann. §§ 16.061–.072 (Vernon 1997 & Supp.1998).

35. Tex. Civ. Prac. & Rem Code Ann § 16.063 (Vernon 1997).

unsound mind at the time his cause of action accrues, the time during which he is of unsound mind is not included in a limitations period.[36] The death of a person against whom or in whose favor there may be a cause of action suspends the running of an applicable statute of limitations for twelve months after the death.[37]

Thus, there are often compelling reasons for invoking exceptions to the rigid application of statutes of limitations, as in the judicially and legislatively created tolling provisions discussed above. Each of these provisions is based on practical and sound reasoning and is specifically crafted to address particular situations. We now turn to the limitations provision in the Act, the purpose it is meant to serve, and the question of whether there are compelling reasons for applying tolling provisions to avoid limitations in suits brought pursuant to the Act.

### Limitations under the Medical Liability and Insurance Improvement Act

The legislative intent of the Act, and the wording of its limitations provision, stand in stark contrast to the typical limitations provisions and the above exceptions. In the Act, the legislature determined that a medical malpractice insurance crisis exists in the state, which has a material adverse effect on the delivery of medical and health care in Texas.[38] These adverse effects include lesser availability of care, higher costs, and the lessened availability of medical malpractice insurance.[39] The stated purpose of the Act, in part, is to reduce excessive frequency of claims in a manner that will not unduly restrict a claimant's rights any more than necessary to deal with the crisis.[40] An addition-

al purpose of the Act is to "make certain modifications to the liability laws as they relate to health care liability claims *only* and with an intention of the legislature to not extend or apply such modifications of liability laws to any other area of the Texas legal system or tort law."[41]

In furtherance of these purposes, section 10.01 of the Act strictly limits the length of time an insured health care provider is exposed to potential liability.[42] Section 10.01 states that the two-year limitations period for bringing a claim under the Act applies "[n]otwithstanding any other law."[43] This limitation provision applies to all persons "[e]xcept as herein provided." In other words, the Act does not anticipate *any* exceptions to the limitations period (other than the exception specifically stated within the Act relating to minors under the age of twelve). Thus the language of section 10.01, along with the stated legislative findings and purpose of the Act, clearly indicates a legislative intent to strictly limit the time for asserting health care liability claims, not only to avoid stale claims, but also to reduce the frequency of claims.

Recognizing the legislative intent behind the Act, courts have considered the applicability of various tolling provisions to section 10.01 and, in most cases, found them inapplicable. A defendant's absence from the state does not toll the limitations period in suits brought under the Act.[44] The statutory limitations provision for survival actions, which suspends the limitations period for twelve months after death, does not apply to extend the time for filing health care liability claims.[45] The express provisions of section 10.01 exclude the unsound mind tolling provi-

---

**36.** TEX. CIV. PRAC. & REM.CODE ANN. § 16.001 (Vernon 1986 & Supp.1998).

**37.** TEX. CIV. PRAC. & REM.CODE ANN. § 16.062 (Vernon 1997).

**38.** TEX.REV.CIV. STAT. ANN. art. 4590i, § 1.02(a) (Vernon Supp.1998).

**39.** *Id.*

**40.** *Id.* § 1.02(b)(1), (3).

**41.** *Id.* § 1.02(b)(7) (emphasis added).

**42.** *Sax v. Votteler,* 648 S.W.2d 661, 666 (Tex. 1983).

**43.** TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01 (Vernon Supp.1998).

**44.** *Hill v. Milani,* 686 S.W.2d 610, 611 (Tex. 1985).

**45.** *Rascoe v. Anabtawi,* 730 S.W.2d 460, 461 (Tex.App.—Beaumont 1987, no writ).

sion from operation in health care liability claims.[46] Indeed, as this Court has stated, "[t]he language of section 10.01 is clear and exclusive.... The Act contains the only tolling provisions that suspend the absolute two-year bar: minority and timely notice."[47]

■ The Texas Supreme Court has emphasized that the clear language of section 10.01 applies to all health care liability claims *notwithstanding any other law*.[48] The court explained that the legislature intended that, when the time limitations of section 10.01 conflict with another law, section 10.01 governs.[49] Thus, a wrongful death plaintiff suing on a medical negligence theory does not necessarily have two full years from the time of death to bring a lawsuit as provided for in section 16.003 of the Civil Practice and Remedies Code.[50] Additionally, the supreme court held over a decade ago that the legislature's intent in passing section 10.01 was to abolish the discovery rule in cases governed by the Act.[51]

■ Indeed, the Texas Supreme Court has refused to apply the literal limitations provision of section 10.01 only in two types of circumstances. First, section 10.01 will not be applied in contravention of the open courts provision of the Texas Constitution.[52] Secondly, fraudulent concealment of malpractice by a health care provider may estop the provider from asserting limitations under the Act.[53] Neither of these circumstances are applicable here.

The parties direct our attention to *Dougherty v. Gifford*,[54] which is factually similar to this case. There, the plaintiff filed a timely suit alleging health care liability claims under the Act against M.K. Dougherty d/b/a Marshall K. Dougherty M.D. & Associates. After the limitations period provided by the Act expired, the plaintiffs amended their petition to sue M.K. Dougherty & Associates, P.A. After a jury trial, the trial court entered judgment against the defendants. They appealed claiming, among other things, that any claims against the professional corporation were barred by limitations. The Texarkana court of appeals held that the case was one of misnomer.[55] Nevertheless, it undertook a misidentification analysis and determined that, because Dougherty could not have been misled or prejudiced by the pleading error, the original petition tolled the statute of limitations. In doing so it cited several misidentification cases, including *Hilland* and *Parker*, dealing with general limitations statutes, not the limitations provision of the Act. It did not discuss the language of section 10.01 or the intent behind the Act.[56]

As discussed previously, the legislative purpose behind the typical statute of limitations differs significantly from the legislative purpose behind section 10.01 of the Act. When *Dougherty* held that misnomer or misidentification tolled limitations under the Act, it failed to construe section 10.01 in a manner consistent with the legislative intent of the Act. Thus, we decline to follow it.

Additionally, Chilkewitz (and the dissent) relies on *Cummings v. HCA Health Services of Texas, Inc.* There the plaintiff filed a health care liability suit against Hospital Corporation of America, d/b/a Tidelands General Hospital. After limitations had expired,

**46.** *Del–Ky, Inc.*, 844 S.W.2d at 256.

**47.** *Id.* at 255 (citing *Hill*, 686 S.W.2d at 611).

**48.** *Bala*, 909 S.W.2d at 892 (emphasis original).

**49.** *Id.* at 892–93.

**50.** *Id.* at 893.

**51.** *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985).

**52.** *See, e.g., Neagle v. Nelson*, 685 S.W.2d 11, 12 (Tex.1985); *Nelson v. Krusen*, 678 S.W.2d 918, 923 (Tex.1984) (op. on reh'g) (section 10.01 cannot be applied to cut off a cause of action before the action is known to exist or before suit can be brought, thereby abridging a plaintiff's rights under the open courts provision of the Texas Constitution).

**53.** *See, e.g., Borderlon v. Peck*, 661 S.W.2d 907, 909 (Tex.1983) (fraudulent concealment held to be an equitable estoppel to the affirmative defense of limitations under the Act).

**54.** 826 S.W.2d 668 (Tex.App.—Texarkana 1992, no writ).

**55.** *Id.* at 677.

**56.** *Id.*

plaintiff amended to name HCA Health Services Inc. d/b/a Tidelands General Hospital. The trial court granted summary judgment against plaintiff, holding that the action against HCA Health Services was barred by limitations.

The dissent cites *Cummings* as holding that the claim against HCA Health Services was timely because of Rule 28. Although *Cummings* discussed Rule 28, it never reached the question of whether it applied to toll limitations under the Act. Instead, it properly characterized the issue as whether the plaintiff misidentified the defendant, and stated:

> *Regardless of whether Rule 28 applies*, we think there are material issues of fact whether appellee received notice of this lawsuit and whether it was misled or disadvantaged by its subsequent inclusion.[57]

Thus, the discussion of Rule 28 in *Cummings* was dicta. Further, *Cummings*, like *Dougherty*, reached its conclusion without any mention of the intent of the Act, and without discussing the import of the "[n]otwithstanding any other law" language in section 10.01 of the Act. Thus, we decline to follow either the ruling implicit in *Cummings* that misidentification can toll limitations under the Act, or its dicta regarding Rule 28.

The dissent argues that Rule 28 "is not a tolling provision for purposes of [the Act]." In doing so it does not address the cases holding that Rule 28 operates as a tolling provision.[58] Indeed, the only cases the dissent cites dealing with Rule 28, *Bailey* and *Cummings*, recognize that Rule 28 operates by tolling limitations until the party is sued in its proper name.[59] Neither does the dissent identify any language in the Act supporting this position, or explain why Rule 28

is a tolling provision for one purpose but not for another.

The dissent also tries to exempt Rule 28 from the application of the "[n]otwithstanding any other law" provision in section 10.01, and distinguish it from the other tolling provisions discussed above on the grounds that it is not a law, but a procedural rule promulgated by the Texas Supreme Court. This would elevate a procedural rule above the law enacted by the legislature, contravening the Texas Constitution, which gives the Supreme Court the power to make only those rules of civil procedure not inconsistent with the laws of the state.[60] We decline to follow the dissent's analysis.

In summary, the legislature clearly and deliberately passed legislation treating health care liability claims differently from other types of claims.[61] We are required to construe section 10.01 in a manner consistent with its purpose of strictly limiting the length of time an insured health care provider is exposed to potential liability and reducing the frequency of health care liability claims.[62] The courts have previously determined that most tolling provisions do not apply to section 10.01.[63] Indeed, section 10.01 was intended to eliminate court-developed exceptions to the limitations period.[64] Eliminating these exceptions furthers the legislative intent to address its perceived medical malpractice insurance crisis and advances its stated policy of reducing the frequency of claims.

### Application of Law to the Facts

■ By use of the phrase "notwithstanding any other law," the legislature clearly stated its intent to limit any exceptions to the limitations period applicable to health care liability claims. The doctrines of misnomer

---

**57.** *Cummings*, 799 S.W.2d at 405 (emphasis added).

**58.** *See* footnote 11, *supra*.

**59.** *See Bailey*, 894 S.W.2d at 759; *Cummings*, 799 S.W.2d at 405.

**60.** Tex. Const. art. V, § 31(b); *see Few v. Charter Oak Fire Ins. Co.*, 463 S.W.2d 424, 425 (Tex. 1971).

**61.** *See* Tex. Rev. Civ. Stat. Ann. art. 4590i, § 1.02(b)(7) (Vernon Supp.1998).

**62.** *See Sax*, 648 S.W.2d at 666; *Owen*, 78 S.W.2d at 179.

**63.** *See Hill*, 686 S.W.2d at 611; *Del–Ky, Inc.*, 844 S.W.2d at 256; *Rascoe*, 730 S.W.2d at 461.

**64.** *See Del–Ky, Inc.*, 844 S.W.2d at 255.

and assumed name are a part of the "other law" referred to in section 10.01. Further, even if Chilkewitz had not waived misidentification as a matter in avoidance of limitations (and without addressing whether the existence of misidentification is supported by the record), misidentification is also a part of that "other law" referred to by section 10.01. We conclude the legislature did not intend for these procedural or equitable tolling provisions to apply to the limitations period provided for in the Medical Liability and Insurance Improvement Act. Accordingly, none of these doctrines can toll the statute of limitations set forth in the Act.

It is undisputed that Chilkewitz filed his First Amended Original Petition, in which he first named Association as a defendant, more than two years and seventy-five days after the date his claim arose. Thus, his suit against Association is barred by limitations as a matter of law and the trial court erred in denying Association's motion for judgment notwithstanding the verdict.[65] We sustain Association's first point of error. Because of our disposition of point of error one, we need not reach Association's second and third points of error.[66]

## COSTS

▮ In a cross-point of error, Chilkewitz asserts that if this Court reverses the trial court's judgment, Association should be required to pay the cost of documents included in the transcript that were not necessary to the appeal. Chilkewitz asserts that at least eighty-five percent of the transcript is unnecessary for presentation of Association's points of error. Therefore, he argues, Association should be required to pay eighty-five percent of the total transcript cost.

Chilkewitz listed nine general categories of documents, including "other extraneous matters" and asserted that "[t]hese items are not relevant or material to the three points of error raised by" Association in its brief. Chilkewitz did not name specific documents

he claims are not necessary, nor explain in what way they are irrelevant.

It is Chilkewitz's burden to specify the pages in the record where the alleged error can be found.[67] An appellate court has no duty to search a voluminous record without guidance to determine whether an assertion of error is valid.[68] This Court declines to make an independent search of the transcript in an attempt to support Chilkewitz's claims. Accordingly, we overrule Chilkewitz's cross-point of error.

## CONCLUSION

We reverse the trial court's judgment and render judgment that Chilkewitz take nothing against Association.

THOMAS, C.J., and KINKEADE, OVARD, MALONEY, WHITTINGTON and ROACH, JJ., join in the majority opinion.

JAMES, J., dissents with opinion.

LAGARDE, CHAPMAN, WRIGHT and BRIDGES, JJ., join in the dissenting opinion.

JAMES, Justice, dissenting.

Because I believe the majority opinion incorrectly concludes that Chilkewitz's malpractice claim is barred by limitations and, in doing so, makes a significant change in established precedent, I respectfully dissent.

This is a health care liability claim. Chilkewitz originally brought suit against Morton I. Hyson, M.D. ("Hyson M.D."), another doctor, and a hospital. In his first amended petition, Chilkewitz did not again name Hyson M.D. but instead named Morton I. Hyson, M.D., P.A. ("Hyson P.A.") as defendant. The original petition was filed within the two-year limitations period provided by the Medical Liability and Insurance Improvement Act. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 10.01 (Vernon Supp.1998). However, the first amended petition naming Hyson P.A. was not filed within two years of the accrual of Chilkewitz's cause of action. Accordingly,

---

**65.** *See Beeson,* 835 S.W.2d at 693.

**66.** Tex.R.App. P. 47.1.

**67.** Tex.R.App. P. 38.1(h).

**68.** *Barham v. Turner Constr. Co.,* 803 S.W.2d 731, 740 (Tex.App.—Dallas 1990, writ denied).

the majority concludes that Chilkewitz's claim against Hyson P.A. is barred by limitations. I respectfully disagree.

Chilkewitz contended in the trial court and contends here that Hyson P.A. was misnamed in plaintiff's original petition but was correctly served. Additionally or alternatively, Chilkewitz contends that Hyson P.A. was properly made a party in the original petition when it was sued under its assumed or common name of Hyson M.D. as allowed by rule 28 of the Texas Rules of Civil Procedure.

Rule 28 authorizes suit against a business entity in its common or assumed name.[1] The rule provides:

> Any partnership, unincorporated association, private corporation, or individual doing business under an assumed name may sue or be sued in its partnership, assumed or common name for the purpose of enforcing for or against it a substantive right, but on motion by any party or on the court's own motion the true name may be substituted.

TEX.R. CIV. P. 28. Chilkewitz presented evidence that Hyson M.D. was the assumed or common name of Hyson P.A. The factual sufficiency of that evidence is not challenged. Instead, Hyson P.A. asserts (and the majority accepts) the legal argument that rule 28 has no application to a plea of limitations in a medical malpractice case because the rule falls within the grasp of the phrase, "[n]otwithstanding any other law," in section 10.01. *See* TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01 (Vernon Supp.1998). Therefore, for purposes of this opinion, we take as true the factual allegation that Hyson M.D. is a common or assumed name for Hyson P.A.[2]

Under rule 28, a subsequent amendment alleging the true name of a defendant relates back to the date of the filing of the original petition if the original petition named that defendant in its assumed or common name. Rule 28 is not a tolling provision for purposes of section 10.01 of article 4590i. Rather, it is a procedural rule promulgated by the supreme court governing pleadings and practice. *See Bailey v. Vanscot Concrete Co.*, 894 S.W.2d 757, 759 (Tex.1995). Rule 28 simply prescribes the terms and conditions for proper pleading of parties, the concomitant result of which is that the statute of limitations ceases to run as to the defendant named and served in accordance with the rule.

In light of the specific language of rule 28, I conclude that when the original petition naming Hyson M.D, the assumed or common name of Hyson P.A., was served upon Morton I. Hyson M.D., Hyson P.A.'s chief executive officer, jurisdiction was perfected over Hyson P.A. Because the suit against Hyson P.A. was timely under section 10.01 of article 4590i, appellee's claims were not time barred.

The majority concludes otherwise. Germane to the majority's holding is the text of section 10.01, which provides in relevant part:

> *Notwithstanding any other law,* no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed.... *Except as herein provided,* this subchapter applies to *all* persons regardless of minority or other disability.

TEX.REV.CIV. STAT. ANN. art. 4590i, § 10.01 (Vernon Supp.1998) (emphasis added). The majority concludes that in cases other than medical malpractice suits, rule 28 serves to toll the applicable limitations provision. Therefore, the majority reasons that rule 28 is included in the phrase, "any other law."

---

1. The record reflects that Chilkewitz first referenced rule 28 in his second amended petition filed in November 1990. After the trial court denied Hyson P.A.'s motion for summary judgment on limitations grounds, Chilkewitz filed his third through sixth amended petitions that omitted references to rule 28. The reference to rule 28 reappears in his seventh amended petition filed at the close of trial.

2. As noted by the majority, the parties agreed that any factual determinations relating to the issue of limitations would be determined by the judge rather than the jury. By denying Hyson P.A.'s motion for judgment notwithstanding the verdict, the trial court impliedly found that one of the matters in avoidance of limitations, either rule 28 or misnomer, applied to defeat the limitations bar.

Accordingly, the majority holds that the provisions of rule 28 are inapplicable to calculations of the limitations period in a medical malpractice case because section 10.01 mandates that suit must be filed within two years "notwithstanding any other law."

I agree that *statutory* tolling provisions not specifically enumerated in section 10.01 cannot serve to lengthen the limitations period in a medical malpractice case. However, for reasons earlier stated, rule 28 does not fall within the phrase "notwithstanding any other law." Moreover, the "notwithstanding any other law" provision was not invoked because the "action" was filed within two years.

The cases cited by the majority holding that tolling provisions are inapplicable to medical malpractice cases all concern tolling provisions statutorily mandated in the Texas Civil Practice and Remedies Code. For example, the absence from the state of a person against whom a cause of action may be maintained ordinarily tolls the running of the applicable statute of limitations for the period of the person's absence. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.063. In *Hill v. Milani,* 686 S.W.2d 610, 611 (Tex.1985), the supreme court held that provision is inapplicable in a medical malpractice case because of the restrictive language of section 10.01. *See also, Rascoe v. Anabtawi,* 730 S.W.2d 460, 461 (Tex.App.—Beaumont 1987, no writ) (statutory limitations provision for survival actions, which suspends the limitations period for twelve months after death, does not apply to extend the time for filing health care liability claims); *Waters v. Del–Ky,* 844 S.W.2d 250, 256 (Tex.App.—Dallas 1992, no writ) (unsound mind tolling provision inapplicable in health care liability claim).

A procedural rule, such as rule 28, is distinct from a statutory law such as those found in the civil practice and remedies code. Procedural rules are promulgated by the Texas Supreme Court and relate to the method of trial. *Owens–Corning v. Martin,* 942 S.W.2d 712, 721 (Tex.App.—Dallas 1997, no writ). Rule 28 identifies the parties against whom suit may be maintained. For example, in *Cummings v. HCA Health Services,* 799 S.W.2d 403 (Tex.App.—Houston [14th Dist.] 1990, no writ), plaintiff died of cardiac arrest while a patient at Tidelands General Hospital. His estate filed a medical malpractice action against Hospital Corporation of America (HCA) d/b/a Tidelands General Hospital. After limitations expired, plaintiff filed an amended petition naming HCA Health Services Inc. d/b/a Tidelands General Hospital as a defendant for the first time. The trial court granted summary judgment to HCA Health Services on the basis of limitations. *Id.* In its opinion reversing, the appellate court reasoned that Tidelands General Hospital was the assumed name of HCA Health Services. Pursuant to rule 28, so long as suit against the assumed name was timely, suit against the business entity itself was also timely. *Id.* at 405.

Here, Hyson M.D. filed a motion for summary judgment on the basis that he did not perform the surgery, own the equipment used in the surgery, or supervise any of the surgical personnel. In response, Chilkewitz amended his petition to reflect Hyson P.A. as the defendant. In response, the same attorneys who had represented Hyson M.D. moved for summary judgment on behalf of Hyson P.A. on the basis of limitations. This is the exact course of action that rule 28 was intended to prevent. In this case, rule 28 did not, in contravention of section 10.01, toll or extend the two-year limitations period. Chilkewitz still had to, and did, commence his lawsuit within two years. Rule 28 only allows Chilkewitz to initially assert his cause of action against the assumed or common name of the business entity ultimately liable. *See Bailey v. Vanscot Concrete Co.,* 894 S.W.2d at 759–60.

Here, it is undisputed Hyson P.A. was put on notice when Hyson M.D. was served and Hyson P.A. immediately commenced its defense of Chilkewitz's claim. Thus, the purposes which statutes of limitations serve have been fully met here. *See Palmer v. Enserch Corp.,* 728 S.W.2d 431, 433 (Tex.App.—Austin 1987, writ ref'd n.r.e.).

A case directly on point is *Dougherty v. Gifford,* 826 S.W.2d 668 (Tex.App.—Texarkana 1992, no writ). Gifford timely filed a medical malpractice suit naming the defendant as M.K. Dougherty d/b/a Marshall K.

Dougherty M.D. & Associates. Later, outside the limitations period, Gifford named Marshall K. Dougherty & Associates, *P.A.* On appeal, Dougherty asserted that Gifford's claims against the professional association were barred by limitations. The court of appeals disagreed. The court concluded that Gifford merely misnamed Dougherty in his original petition; therefore, limitations was tolled and Gifford's subsequent amendment related back to the date of the original opinion. *Id.* at 676 (citing *Enserch,* 794 S.W.2d at 4–5). The court noted that the primary purpose of limitations is to force the plaintiff to file suit within a reasonable period of time so that a defendant has a fair opportunity to gather competent and reliable information. *Id.* at 677. The statute should not apply in circumstances where no party is misled or disadvantaged by the error in the pleading. *Id.* Dougherty was not misled or prejudiced by the mere fact that his association was not sued as a professional corporation. Dougherty was the sole owner, director and operator of the corporation. Service was effected upon him, and the same attorney represented him throughout the litigation. *Id.*[3]

The majority states "the question before us is whether, in the light of the restrictive language in section 10.01, either the doctrines of misnomer or assumed name can toll the limitations period contained in the Act." In framing the issue, the majority incorrectly concludes rule 28 falls within the doctrine of misnomer. I disagree there exists a "doctrine" of assumed name subject to the annulment of section 10.01. Rather, suit against a defendant in its assumed or common name is a practice allowed by rule 28 to obtain jurisdiction over a defendant. The practice of suit and service upon a defendant in its assumed or common name is not a tolling provision *per se* although, as with any proper filing and service, limitations ceases to run on behalf of the defendant sued.

I agree we must examine the wording of section 10.01 with the presumption the legislature intended a just and reasonable result.

However, none of the public policy considerations cited by the majority to support its strict application of limitations in medical malpractice cases is implicated in the practice allowed by rule 28. A defendant sued in its assumed or common name has actual notice of the alleged claims within the limitations period and presumably has the same opportunity to gather competent and reliable evidence before the claims become stale that it would have if sued in its legal name. On the contrary, rule 28 justly ends the practice of defendants filing a general denial and then waiting until the statute of limitations runs before disclaiming responsibility and pointing to the party actually responsible. *See Bailey v. Vanscot Concrete Co.,* 894 S.W.2d at 760. I do not contend, as the majority asserts, Rule 28 takes precedence over section 10.01 in contravention of the Texas Constitution. What I conclude, quite simply, is Rule 28 is not "any other law."

Hyson P.A.'s other points of error, if sustained, would result in either a new trial or reformation of judgment. I express no opinion on the merits of those points.

---

**3.** The majority declines to follow the holding in *Dougherty* and the holding in *Cummings v. HCA Health Services* (discussed *supra* op. at 572–573) because those courts did not expressly consider the legislative history of the Medical Liability and Insurance Improvement Act. Because there is no conflict between rule 28 and the medical liability act, it was unnecessary for either court to consider the act's legislative history.